UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 08-CV-04950 (JFB) (ARL)

———————————

MATTHEW SEXTON, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

FRANKLIN FIRST FINANCIAL, LTD., FREDERICK L. ASSINI, KEITH DIZEO, AND ELLEN SPAVENTA,

Defendants.

———————————

MEMORANDUM AND ORDER
June 16, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Matthew Sexton (hereinafter, "plaintiff") commenced this action on behalf of himself and others similarly situated on December 9, 2008, seeking unpaid minimum wages and overtime compensation from defendants Franklin First Financial, Ltd., Frederick L. Assini, Keith Dizeo, and Ellen Spaventa (collectively, "defendants"), pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201, *et. seq.*, as well as New York Labor Law.[1] Plaintiff now moves, with respect to Counts One and Two of the amended complaint, for conditional certification as an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)"). Plaintiff also moves for court authorized notice to all individuals who are similarly situated in this potential collective action, and, to facilitate such notice, the production by defendants of a computer-readable data file containing the names, addresses, and telephone numbers of certain of defendants' former and current employees. For the reasons set forth below, plaintiff's motion for conditional certification under Section 216(b) of the FLSA, as well as court authorized notice and the production by defendants of a data file of potential opt-in plaintiff's contact information, is granted. However, the scope of such notice shall be limited to only those individuals who are "similarly situated" to the named plaintiff, as set forth in this Memorandum and Order. The

---

[1] Plaintiff filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure with respect to his claims under New York Labor Law, but no motion for Rule 23 class certification has yet been made by plaintiff at the time of this opinion.

Court further orders that the parties jointly submit a modified notice in accordance with this Memorandum and Order for approval by the Court within thirty (30) days of the date of this Order.

Also pending before the Court is defendants' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(c) dismissing the claims of certain opt-in plaintiffs, on the basis that such claims are time-barred. Because the Court concludes that the issue of equitable tolling cannot be resolved on a motion for summary judgment prior to discovery, defendants' motion is denied as premature at this stage of litigation pursuant to Fed. R. Civ. P. 56(f), without prejudice to its renewal at a later stage of the proceedings.[2]

I. BACKGROUND

A. Facts

Plaintiff was formerly employed as a loan officer by defendants from June to October 2008 and worked at defendants' office located in West Hempstead, New York. (Amended Complaint ("Am. Compl.") ¶¶ 5-6; Plaintiff's Exh. C ¶¶ 2-3.) Defendant Franklin First Financial, Ltd. ("Franklin First") is a mortgage bank and brokerage firm that provides mortgage banking services to consumers in New York State and elsewhere. (Am. Compl. ¶¶ 8, 13.) Defendant Frederick L. Assini has been the President of Franklin First at all times relevant to the allegations in the complaint. (Am. Compl. ¶ 9.) Defendants Keith Dizeo and Ellen Spaventa have, at all times relevant, been the Vice President of Branch Operations and the Human Resources Manager of Franklin First, respectively. (Am. Compl. ¶¶ 10-11.) All three individual defendants are alleged to have exercised operational control and control over significant business functions of Franklin First, and to have determined employee salaries, made hiring decisions, and acted on behalf of the company in devising, directing, implementing, and supervising the wage and hour practices and policies. (Am. Compl. ¶¶ 9-11.)

Plaintiff alleges that all loan officers employed by defendants during the relevant period were subjected to defendants' uniform, company-wide, and centrally disseminated policies and procedures regarding compensation. (Am. Compl. ¶¶ 14, 16, 18.) In particular, per defendants' uniform company-wide policies, plaintiff and all similarly situated loan officers allegedly did not receive a weekly guaranteed salary of at least $455.00 and routinely did not receive minimum wages for hours worked, and they routinely worked in excess of forty (40) hours per week without overtime compensation, despite being required to arrive early and work late and frequently work on weekends. (Am. Compl. ¶¶ 19-22; Plaintiff's Exhs. D-L ¶¶ 6-9.) Furthermore, "[n]either [p]laintiff nor the similarly situated [l]oan [o]fficers were required to record their time worked and [d]efendants failed to maintain accurate time records[.]" (Am.

---

[2] Plaintiff requests a stay of defendants' motion pending discovery on the equitable tolling issue, and defendants request, in the alternative to their motion, a continuance of discovery; both requests are purportedly made pursuant to Fed. R. Civ. P. 56(f), even though Rule 56(f) is intended for the party opposing the motion. In any event, the Court has the discretion to also deny the motion pursuant to Fed. R. Civ. P. 56(f) and finds that a denial without prejudice is appropriate in this case, since discovery as a whole is at its early stages and is not only limited to the equitable tolling issue. After the close of discovery, defendants may move for summary judgment on the statute of limitations issue, in addition to any other grounds.

Compl. ¶ 23; *see also* Plaintiff's Exhs. D-L ¶ 10.) Plaintiff also alleges that all loan officers had essentially the same job duties and had the primary duty to sell residential mortgage loans. (Am. Compl. ¶¶ 15-16.) These employees' primary duty was to sell home loans to prospective customers on the telephone from defendants' offices in Syosset, West Hempstead, or Hauppauge, input the customers' information in a database, and close the deal. (Plaintiff's Exhs. D-L ¶¶ 3, 5.)

### B. Procedural History

Plaintiff filed this action on December 9, 2008. On March 10, 2009, plaintiff submitted the instant motion for conditional certification as an FLSA collective action. On April 13, 2009, defendants filed their opposition papers, and plaintiff submitted a reply on April 22, 2009. Defendants filed their motion for partial summary judgment on April 23, 2009. Plaintiff filed its opposition to that motion on May 1, 2009, and defendants filed their reply on May 7, 2009.

By letter dated April 23, 2009, plaintiff requested a pre-motion conference in anticipation of filing a motion to amend the complaint to add two individual defendants, namely Keith Dizeo and Ellen Spaventa. Following a telephone conference with the Court held on May 4, 2009, counsel for the defendants informed the Court by letter dated May 8, 2009 that it would not oppose plaintiff's motion. On May 12, 2009, in light of defendants' position, as well as the liberal standard for granting leave to amend under Fed. R. Civ. P. 15(a) and the early stage of litigation in this case, the Court granted plaintiff leave to amend the complaint accordingly. The amended complaint was filed on May 12, 2009.

Oral argument was heard on the pending motions on June 15, 2009. The Court has fully considered the submissions of the parties.

### II. DISCUSSION

#### A. Conditional Certification

##### 1. Legal Standard

Section 216(b) of Title 29 provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) of the FLSA provides an employee with a private right of action to recover unpaid overtime compensation and/or minimum wages. *See id.*; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). "Although the FLSA does

3

not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Parks v. Dick's Sporting Goods, Inc.*, No. 05 Civ. 6590 (CJS), 2007 WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

To determine whether an action should be certified as an FLSA collective action, a two-step analysis is used. *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008) ("Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA"). The first step is to determine whether the proposed class members are "similarly situated." *Rubery*, 569 F. Supp. 2d at 336; *see also Gjurovich*, 282 F. Supp. 2d at 105 ("Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff."). At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and plaintiff must make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek*, 229 F.R.D. at 387. In making this showing, "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan" is required. *Id.* This first stage determination is "based on the pleadings, affidavits and declarations[.]" *Hens v. ClientLogic Operating Corp.*, No. 05 Civ. 381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006); *see also Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

Importantly, "the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Gjurovich*, 282 F. Supp. 2d at 104 (internal quotation marks and citation omitted).

On the other hand, the second phase of the FLSA collective action inquiry typically occurs after the completion of discovery; at that point, the court makes a factual finding based on the developed record as to whether or not the class members are actually "similarly situated." "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Hens*, 2006 WL 2795620, at *4 (citation omitted). If the court determines at that time that the members are not similarly situated under the law, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Rubery*, 569 F. Supp. 2d at 336. Also, "should the class description later be shown to require additional modifications, they can be made, as appropriate, during a second tier inquiry." *Id.* at 338; *see also Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (stating that the "court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so").

Notably, "[c]ollective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure." *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 348 (W.D.N.Y. 2007). Under the FLSA, potential plaintiffs are required to "opt-in" "to be bound by the judgment (and to benefit from it)." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Each

potential plaintiff must file his or her written consent in the court in which the suit is brought. *See id.* In relation to the class certification requirements, "a named plaintiff in a collective action need not demonstrate other facts – numerosity, commonality, typicality, and adequacy of representation – which are required to bring a class action." *Hens*, 2006 WL 2795620, at *3.

2. Application

Here, plaintiff has alleged that he and the potential opt-in plaintiffs, who worked at Franklin First's Syosset, Hauppauge, and West Hempstead offices in New York as loan officers, were subjected to a uniform policy and practice of being required to work in excess of forty (40) hours per week without receiving overtime or minimum pay, in violation of the FLSA. Specifically, plaintiff alleges that the defendants have a common policy or practice to deny minimum and overtime wages to its loan officers, who have similar job duties, by improperly classifying them as exempt employees, paying them primarily based only on commission, and failing to maintain accurate time records of hours worked by employees. The named plaintiff attests that, while employed by defendants, he worked with approximately thirty (30) other loan officers whom he observed on a daily basis and were similarly not paid overtime wages despite working over forty (40) hours per week. (Plaintiff's Exh. C ¶ 9.) The allegations in the complaint and plaintiff's affidavit are supported by the consent forms filed by twenty-three (23) additional loan officers alleging that they worked in excess of forty (40) hours per week and were denied overtime compensation (Plaintiff's Exh. A; docket entry [22]), as well as the declarations of nine other loan officers attesting to defendants' common compensation practice. (*See* Plaintiff's Exhs. D-L.) According to plaintiff and opt-in plaintiffs, by paying these employees on primarily a commission-only basis, with no guaranteed salary, loan officers generally were not paid anything unless they made a sale. (*Id.*) Although "a few loan officers did periodically receive a bi-weekly 'draw', this amount did not total at least $455 . . . and therefore did not satisfy the salary basis test for an exemption as a matter of law." (Plaintiff's Memorandum of Law, at 3; *see also* Plaintiff's Exh. C ¶ 6.) Moreover, plaintiff claims that even assuming such draws totaled more than $455 per week, such "recoverable draws" do not meet the salary basis test, as they were deducted from any commissions earned. (Plaintiff's Memorandum of Law, at 3-4) (citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1110 (S.D. Cal. 2006)). Plaintiff and opt-in plaintiffs further allege that defendants uniformly administered and enforced their sales policies to all such loan officers through their training program, weekly meetings, supervision and encouragement of longer work hours, and production goals and quotas. (*See* Plaintiff's Exhs. C-L ¶¶ 4-9.) These employees also observed other loan officers who performed similar duties and were also not paid minimum wage or overtime compensation. (Plaintiff's Exhs. C-L ¶ 9.)

Based on the pleadings and evidentiary showing made by plaintiff and opt-in plaintiffs, the Court finds that plaintiff has satisfied his burden at this initial stage of the FLSA collective action inquiry. In particular, the "similarly situated" requirement has been satisfied because plaintiff and opt-in plaintiffs have set forth a factual basis – more than "modest" – for having been subject to a common policy of being denied overtime and minimum pay by defendants. *See Hens*, 2006 WL 2795620, at *3. They have made specific

allegations about how they were paid for their work by defendants, and this practice is alleged to have been applied to all loan officers selling residential loans in the Syosset, Hauppauge, and West Hempstead offices of Franklin First. Because, at this stage, the burden on plaintiffs is a minimal one and only a "modest factual showing" need be made with respect to the issue of potential plaintiffs being "similarly situated," opt-in plaintiffs' "substantial allegations," *Scholtisek*, 229 F.R.D. at 387, regarding defendants' common failure to pay its loan officers minimum wages and overtime pay pursuant to the FLSA, are sufficient to overcome this burden. *See Patton v. Thompson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *see also Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (describing the burden as "very low" at the notice stage); *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *2 (S.D.N.Y. Jan. 12, 2007) ("Plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist.") (internal quotation marks and citations omitted).[3]

In this regard, the Court finds defendants' reliance on *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008), *Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009), *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006), *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008), *Myers v. The Hertz Corp.*, No. 02 Civ. 4325 (BMC) (MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007), *Diaz v. Electronics Boutique of America, Inc.*, No. 04 Civ. 840E, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005), and *Iriarte v. Redwood Deli and Catering, Inc.*, No. 07 Civ. 5062 (FB) (SMG), 2008 U.S. Dist. LEXIS 50072 (E.D.N.Y. June 30, 2008), to be misplaced. First, *Iriarte* actually supports plaintiff's motion for conditional certification, since it granted the motion in that case and stated that "although plaintiff has not identified any other employees who seek to opt in, this is not fatal in light of defendant's failure to keep proper records, the allegations plaintiff makes in his affidavit about observing fellow employees working overtime without proper compensation, and the minimal burden required for certification as a collective action." 2008 U.S. Dist. LEXIS 50072, at *8. Other cases are inapposite because they involved analyses following substantial discovery. In *Amendola*, the court had already engaged in preliminary discovery, including the production by defendants of the names and addresses of 350 employees, more than 6,000 documents, and five witnesses for depositions. *See* 558 F. Supp. 2d at 462. Similarly, in *Myers*, the plaintiffs had already survived summary judgment before moving for conditional certification. *See* 2007 WL 2126264, at *1.

In *Castro*, separate employers were sued by the plaintiffs, and the Court determined that there was no factual showing that a common policy was therefore at issue. *See* 2009 WL

---

[3] Defendants argue that the consent forms and/or affidavits of certain opt-in plaintiffs – namely, Bob Szwaja, Richard Krudysz, Matthew Douglas, Steve Glauber, Eric Harris, Rohit Chetal, Paul Callender, and Patrick Varano – are time-barred and thus have no probative value. (Defendants' Memorandum of Law, at 3-5.) However, as discussed *infra*, there is an issue as to whether equitable tolling applies with respect to these employees' claims. In any event, even assuming *arguendo* that these claims are untimely, the Court finds that, even excluding the evidence proffered by these particular opt-in plaintiffs, there is sufficient evidence to warrant conditional certification in this case.

229952, at *3-*4. Here, the putative class involves employees of only one company, and the Court finds sufficient allegations of a common pay policy. As for *Mendoza*, the court stated there that "[t]he principal defect in these affidavits for collective certification is that not one Plaintiff affidavit purports a factual nexus with other putative employees[.]" 2008 WL 938584, at *2-*3. In this case, named plaintiff Sexton's affidavit does support a factual nexus with the opt-in plaintiffs, as they attest to the same job duties and alleged practice of being denied minimum and overtime compensation. *Morales* is also inapposite because, there, plaintiffs submitted no evidence from other putative class members. *See* 2006 WL 278154, at *2 ("The affidavit and exhibits, however, contain no reference to any Plantworks employee other than plaintiffs, and they make no allegations of a common policy or plan to deny plaintiffs overtime . . . . Here, plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value."). In support of this motion for conditional certification of an FLSA collective action, plaintiff has submitted supporting affidavits from himself, as well as the affidavits of nine potential opt-in plaintiffs and the consent forms of twenty-three opt-in plaintiffs. Finally, *Diaz* involved two groups of plaintiffs, one that argued that they were exempt from the FLSA's requirements and the other that did not, and so the court concluded that no factual nexus existed between the two groups. *See* 2005 U.S. Dist. LEXIS 30382, at *12. In contrast, all putative class members here claim to be non-exempt. Furthermore, this is not a case where "a detailed factual analysis of [a plaintiff's] daily activities and responsibilities," *id.* at *13, is required to make a determination of the plaintiff's exempt or nonexempt status, since the evidence sets forth that all "inside loan officers," as discussed in relation to "outside loan officers" *infra*, had similar duties. Tellingly, although defendants do argue that some issues will require individualized inquiry and should thus preclude certification, also discussed *infra*, they do not argue that the determination of exemption status will require such individualized examination.[4]

In addition, defendants' argument to the effect that "the documentary evidence submitted in opposition to the plaintiff's motion clearly demonstrates that the named plaintiff and opt in plaintiffs have intentionally submitted erroneous testimony to this Court[,]"(Defendants' Memorandum of Law, at 2), is an attack on the credibility of plaintiff and the opt-in plaintiffs that is not properly decided by the Court on this motion. Plaintiff and opt-in plaintiffs have submitted affidavits attesting to the conditions of their compensation and employment, and given such documentary evidence, the Court finds a sufficient factual basis for granting plaintiff's motion at this stage. *Compare Rubery*, 569 F. Supp. 2d at 337 ("[P]laintiff has met her burden to demonstrate, by producing affidavits and time records from other Shop Managers which are indicative of a common policy or plan with respect to the duties and supervisory responsibilities of Shop Managers.") *with Prizmic v. Armour, Inc.*, No. 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying conditional

---

[4] Even if they did, however, "whether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court on this motion. Such factual determinations will be addressed at the second stage of the certification process after the completion of discovery." *Summa v. Hofstra Univ.*, No. 07 Civ. 3307 (DRH) (ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008).

7

class certification where "[p]laintiff [had] not submitted *any* affidavit or documentation in support of the instant motion.") (emphasis supplied); *see generally Sobczak v. AWL Indus., Inc.*, No. 07 Civ. 1226 (BMC) (RER), 2007 WL 4934239, at *6 (E.D.N.Y. Oct. 22, 2007) (stating that courts regularly grant motions to facilitate notice in collective actions "'based upon employee affidavits setting forth a defendant's plan or scheme'") (quoting *Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006)). Moreover, defendants' submissions of time records of plaintiff's work in an attempt to show that he did not work any weekends or "even one hour of overtime" (Defendants' Exh. A), and was "paid for every hour that he worked" (Defendants' Exh. B), cannot simply be accepted by the Court at this stage, as defendants suggest, as dispositive proof that plaintiff "has purposely lied to this Court in an effort to establish a factual nexus between himself and other putative class members." (Defendants' Memorandum of Law, at 2.) In plaintiff's sworn declaration to the Court, plaintiff attests that he regularly worked in excess of forty (40) hours per week and worked evenings, early mornings, and weekends without being properly paid. (Plaintiff's Exh. C ¶¶ 6-8.) Such attestations, which are consistent with plaintiff's allegations in this case, are sufficient for the purposes of this motion, and the Court will refrain from making any credibility determinations. *See, e.g.*, *Summa v. Hofstra Univ.*, No. 07 Civ. 3307 (DRH) (ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.").

Similarly, defendants' argument that opt-in plaintiff Peter DeBartoli states falsely in his affidavit that he worked as an inside loan officer, when in fact he worked as an outside loan officer, and that his claims of working overtime are "clearly contradicted by documentary evidence" (Defendants' Memorandum of Law, at 5) is insufficient to defeat plaintiff's motion at this stage, where "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan[,]" *Scholtisek*, 229 F.R.D. at 387, must be established "based on the pleadings, affidavits and declarations." *Hens*, 2006 WL 2795620, at *3. Indeed, this motion for conditional certification is not the proper forum to litigate the merits of plaintiff's claims. *See, e.g.*, *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification."); *Lynch*, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Neary v. Metro. Property and Cas. Ins. Co.*, 517 F. Supp. 2d 606, 622 (D. Conn. 2007) ("Courts are not to evaluate the merits of potential plaintiffs' claims when determining whether a putative class meets the similarly situated standard."); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here."). *But see Amendola*, 558 F. Supp. 2d at 467 ("Although district courts have held that the merits of a plaintiff's FLSA claim should not be evaluated in determining whether to authorize notice, these holdings may have derived from jurisprudence discouraging engagement with the merits that was developed

8

in the context of Rule 23 class action certification. But, the Second Circuit in *In re Initial Pub. Offering Sec. Litig.* ('In re IPO'), 471 F.3d 24 (2d Cir. 2006), recently clarified that courts deciding whether to certify a class action must determine that each Rule 23 requirement has been met, and that 'the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue.' *Id*. at 41. This Court will, therefore, scrutinize the merits based on the record developed to date by the parties and to the extent necessary to address this motion for authorization of notice.") (additional citations omitted).[5]

Defendants make additional arguments that go to the merits of plaintiff's claims or constitute affirmative defenses thereto. For example, defendants state that opt-in plaintiffs Peter Antosiewicz and Aaron Beta signed a release stating that they were each paid in full for all commissions, salary, overtime, and benefits. (Defendants' Memorandum of Law, at 6, 9.) They also make the argument, as they did in connection with Sexton and DeBartoli, that the documentary evidence submitted by them shows that they never worked overtime. (Defendants' Memorandum of Law, at 6, 9.) Defendants make the same arguments with respect to opt-in plaintiffs William Telford and Gregory Psitos, stating that their sworn statements are contradicted by time records and that they also signed an Employee Settlement and Release Agreement discharging Franklin from any and all claims. (Defendants' Memorandum of Law, at 6-7.) Defendants also submit documentation in an attempt to show that opt-in plaintiffs Nicholas Peligrinis, Charles Gianchetta, and Christan Siefert made similarly misleading claims. (Defendants' Memorandum of Law, at 7.) These arguments are all therefore rejected by the Court at this stage.[6] "At the very least, plaintiffs' detailed allegations and supporting affidavits successfully engage defendants' affidavits to the contrary for purposes of the present motion." *Hallissey*, 2008 WL 465112, at *2

---

[5] The court in *Amendola* engaged in preliminary discovery and analyzed whether plaintiffs were likely to fall within certain exemptions under the FLSA. Here, no discovery has thus far taken place and even if the Court were to undertake some preliminary evaluation of the merits in assessing plaintiff's claims, it would find that there is insufficient evidence to conclude that plaintiff has failed to carry his burden for the purposes of this motion or that defendants have shown "either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation." *Id*. at 467. In further contrast to the situation in *Amendola*, defendants do not argue that plaintiff and opt-in plaintiffs fall within an exception to the requirements of the FLSA as a matter of law. They argue instead that plaintiff and opt-in plaintiffs' claims are factually without basis or subject to certain affirmative defenses.

[6] In any event, the Supreme Court has held that employees cannot release their rights under the FLSA by private agreement, because such action contravenes a statutory right granted in the public interest. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the [Fair Labor Standards] Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."); *see also Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399 (2d Cir. 1989) ("private waiver of claims under the [FLSA] has been precluded by such Supreme Court decisions as *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *D.A. Shulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946).").

9

(quoting *Krueger v. New York Telephone Co.*, Nos. 93 Civ. 0178 (LMM), 93 Civ. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)). Even assuming that defendants' evidence could rebut plaintiff's claims, moreover, they would fail to rebut them in this case because plaintiff and opt-in plaintiffs specifically allege that defendants failed to keep *accurate* time records of the loan officers' hours. Plaintiff argues that defendants' evidence is limited and far from conclusively establishes that the time records of plaintiff and opt-in plaintiffs are accurate or complete, or that their pay records reflect anything but commission-based pay. (Plaintiff's Reply Memorandum of Law, at 5-6.) Finally, defendants' references to other matters pending before other courts, to the extent that such is intended to disprove an opt-in plaintiff's allegations or discredit them (namely, Bob Szwaja, Rohit Chetal, Gaurav Khanna, and Gary Hosking) (*see* Defendants' Memorandum of Law, at 3-4, 8), also fail to establish a proper basis for denying plaintiff's motion. Any estoppel claims, if relevant, go as well to defendants' affirmative defenses to the potential plaintiffs' claims.

Finally, it is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action. Defendants make the point that "Franklin has a defense that is entirely individual to the lead plaintiff, Matthew Sexton." (Defendants' Memorandum of Law, at 11.) First, defendants' argument that Sexton signed time sheets demonstrating that he did not work overtime is not one that is unique to Sexton, as mentioned *supra* in connection with defendants' submissions of documentary evidence. Defendants make the same argument with respect to opt-in plaintiff William Telford, for example. (Defendants' Memorandum of Law, at 12-13.) The defenses that the time sheets signed by these various employees are accurate is actually one and the same defense, even if it applies to more than one employee. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006) ("Any defenses Defendants raise regarding the admitted company policy of docking compensation for not working the designated hours in a workweek does not implicate individual plaintiffs because, here, the standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct.") (citation and internal quotations omitted); *see also Laroque*, 557 F. Supp. 2d at 354 ("Domino's also argues that claims of 'off-the-clock' work and altered time sheets inherently are too individualized to be pursued collectively. The court disagrees. District courts in this circuit regularly grant certification under similar circumstances."). Even if these claims did require individualized inquiries, however, this would not necessarily defeat a motion for conditional certification of a collective action. *See, e.g.*, *Neary*, 517 F. Supp. 2d at 620 ("Defendant's argument that in determining whether its claim of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage."); *Hallissey*, 2008 WL 465112, at *2 ("although there may be circumstances unique to each CL in this case, the fundamental allegation found in Plaintiffs' declarations and pleadings that CLs were denied minimum and overtime wages because of their classification by AOL as 'volunteers' in the CL program is common to all of the CLs."). Thus, the Court rejects defendants' argument on these grounds.

The same applies to defendants' assertion that the possible application of equitable tolling will result in a "highly fact-specific and detailed analysis for each individual opt in plaintiff[.]" (Defendants' Memorandum of

Law, at 12.) Again, the Court disagrees with that statement to the extent that plaintiff alleges that equitable tolling is warranted because defendants failed to post proper notices of employees' rights. That is not an individualized inquiry, and defendants' own submissions of photographs of such alleged notices, in an effort to defeat *all* equitable tolling claims, belies their claim that the issue requires individualized inquiry.

The Court also rejects the individualized inquiry objection as it relates to certain opt-in plaintiffs' alleged release agreements. The legal validity of such agreements are likely to apply across the board or fail as a matter of law, under the circumstances of this case. *See supra* note 6. In any event, even if these defenses are later determined to require an examination of individualized circumstances, the Court may nonetheless continue with the collective action if manageable, or decertify the class at a later stage, or bifurcate the trial, as necessary, to deal with such defenses. *See Torres*, 2006 WL 2819730, at *11.

In sum, and contrary to defendants' contention, plaintiffs have demonstrated a sufficient "factual nexus between [their] situation and the situation of other current and former" employees, *Realite*, 7 F. Supp. 2d at 308, who were potentially denied minimum and overtime wages. The pleadings and affidavits of the plaintiff and opt-in plaintiffs are sufficient at this stage of the litigation for conditional certification of a collective action pursuant to Section 216(b) of the FLSA. Because plaintiff has made the necessary showing, there is no need for the Court to, as defendants suggest, postpone decision on this motion pending discovery, especially in light of the fact that the statute of limitations on potential opt-in plaintiffs' claims continues to run until their consent forms are filed. *See* 29 U.S.C. § 256(a).

B. Scope and Form of Notice

Plaintiff further requests that the Court "authorize notice by U.S. first class mail to all similarly situated persons employed by [d]efendants, who are or were employed as loan officers or other similarly titled positions from December 9, 2005 to the present to inform them of their right to opt-in to this lawsuit." (Plaintiff's Memorandum of Law, at 13.) In other words, plaintiff seeks court authorization to circulate this proposed notice of pendency to putative collective action members, beginning three (3) years from the commencement of this lawsuit. It is estimated that there are "hundreds" of potential opt-in members. (Plaintiff's Memorandum of Law, at 10.) Defendants oppose the notice on the grounds that the notice should be limited "to inside sales loan officers only and that any list of employees disclosed in this action be limited to inside sales loan officers." (Defendants' Memorandum of Law, at 15.)

Even though Section 216(b) does not expressly provide a district court with the authority to order notice, "[t]he Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under this section (generally referred to as 'collective actions'), pursuant to the opt-in provisions of the FLSA." *Rubery*, 569 F. Supp. 2d at 335 (internal citation omitted); *accord Scholtisek*, 229 F.R.D. at 387. Upon conditional certification of an FLSA collective action and notice thereof, class members are given the opportunity to "opt in." *Rubery*, 569 F. Supp. 2d at 336. "Because a collective action requires written consent from the opt-in plaintiffs, 'it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice,' in order to ensure that the drafting and distribution of the

notice is 'timely, accurate and informative.'" *Id.* at 336 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)).

As a threshold matter, the time period beginning December 9, 2005 to the present is the appropriate timeframe for opt-in plaintiffs to have been employed by defendants. The FLSA has a maximum three year statute of limitations period for willful violations, which plaintiff alleges occurred in this case. *See* 29 U.S.C. § 255. Plaintiff filed the complaint in this action on December 9, 2008, so three years prior to commencement of the lawsuit is December 9, 2005. Because the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256, December 9, 2005 is the earliest possible date that a plaintiff in this case may have been last employed by defendants in order to have a timely claim under the FLSA. Defendants do not contend otherwise.

Second, although the Court finds that conditional certification is warranted in this case, it concludes that the scope of the notice should not be as broad as plaintiff has proposed. Here, the Court finds it prudent to limit the scope of the notice to only those employees as to whom there are allegations that they have been affected by defendants' policy of denying minimum wages and overtime pay. This is the key inquiry, and plaintiff and putative collective action members must set forth a modest factual showing that they were all similarly situated with *respect to being subject to the same policy* of being denied overtime and minimum compensation.

According to defendants, outside sales loan officers, as opposed to inside loan officers, "work in the field," "make their own hours and work on their own time." (Defendants' Memorandum of Law, at 15.) Plaintiff sets forth no facts or allegations disputing this and, as conceded at oral argument, plaintiff does not purport to represent outside loan officers in this lawsuit. Indeed, plaintiff has not submitted any affidavits from outside loan officers. The consent forms do not indicate whether any of the opt-in plaintiffs were or are outside loan officers, and plaintiff does not argue, in his moving papers or during oral argument, that any outside loan officers are subject to the same common policy or practice of pay. There is no indication that outside loan officers are, therefore, similarly situated to plaintiff. The critical showing is whether these employees were subject to the same pay policy or practice alleged to be in violation of the FLSA; whether or not inside and outside loan officers had similar job duties, or whether or not they worked in different settings, is not determinative. *See Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) ("In order to be 'similarly situated,' the plaintiffs do not have to perform the same job in the same location as long as there is an [unlawful] policy common to all[.]"); *Realite*, 7 F. Supp. 2d at 308 ("Instead, all that is required is "some identifiable factual nexus which binds the named [plaintiffs] and potential class members together as victims of a particular alleged discrimination."); *Chowdhury*, 2007 WL 2873929, at *4 ("[D]efendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated 'with respect to their allegations that the law has been violated[.]'") (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); *Hallissey*, 2008 WL 465112, at *2 ("While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA. Nor does the fact that employees worked a variety of

different jobs in a number of different departments at different locations preclude class treatment.") (internal citations omitted); *cf. Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *6 (S.D.N.Y. Oct. 5, 2006) ("On defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele."). Thus, while it is true that the difference in job title or description between inside and outside loan officers is not determinative, plaintiff also cannot simply rely on the broader job title of "loan officers" to include outside loan officers in the putative class, where he fails to make any factual showing that these outside loan officers were subject to the same denial of overtime or minimum wages.

Accordingly, the Court finds that notice to *all* loan officers employed by defendants is unnecessary. Because there is no factual basis for deeming plaintiff, with respect to defendants' alleged failure to pay minimum and overtime wages, "similarly situated" to both inside and outside sales loan officers, the notice shall only be sent to those inside sales loan officers who were employed by defendants within the appropriate time period. Again, even though plaintiff is certainly not required to show that he is identically situated to the potential opt-in plaintiffs, or that he possesses the same attributes as them with respect to their jobs, he is required to show that they are subject to the same common policy or plan by defendants. In this regard, the Court is not persuaded that plaintiff has made a sufficient attempt to show that all loan officers employed by defendants are similarly situated to the named plaintiff and as such, the proposed notice should be modified accordingly. *Cf. Sherrill*, 487 F. Supp. 2d at 350 ("Although it is true that a finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is [an unlawful] policy common to all, plaintiffs have not demonstrated that the Sutherland policies and practices complained of affected hourly employees other than telemarketing agents.") (internal quotation marks and citation omitted).

As noted by defendants, these outside loan officers may be subject to an exemption under the FLSA for "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.500. This also weighs in favor of conservatively defining the class to exclude these individuals at this stage. Plaintiff responds that, "[w]hile Plaintiffs do not seek to represent loan officers who are ultimately shown to be subject [sic] this exemption, whether such persons actually exist cannot be determined at this early stage without the benefit of any discovery." (Plaintiff's Reply Memorandum of Law, at 9.) Because there is no allegation or even threshold factual showing warranting certification of this group of individuals, however, the proper course of action is for plaintiff to move for conditional certification of these outside loan officers if discovery reveals that they were in fact similarly situated to plaintiff. There is currently no basis for the Court to conditionally certify this group at this stage. Plaintiff's assertion that defendants may have misclassified certain inside loan officers as outside loan officers, in an effort to circumvent the requirements of the FLSA, lacks a factual basis – even modest – at this stage, and thus broader notice to all such possible individuals is not warranted. Such speculation by plaintiff seems to be based on the affidavit of one opt-in plaintiff, Peter DeBartoli, who claims that he was an inside loan officer while defendants claim that he was in fact an outside loan officer. (*See* Defendants' Exhs. D, X.) However, plaintiff

has provided no affidavits from any inside loan officer saying he or she was purposely misclassified by defendants as an outside loan officer – including no such statement in the affidavit of Peter DeBartoli – or that these misclassified employees were subject to the same alleged violations of the FLSA. Simply put, one case of possible mislabeling is an insufficient factual basis to warrant broad notice to an entire class of employees who, as plaintiff concedes, are presumptively outside the protections of the FLSA. Thus, as discussed at oral argument, if discovery reveals mislabeling by defendants of certain inside loan officers as outside loan officers, then plaintiff may renew his application to have the notice expanded to cover such individuals.

Defendants also oppose certain language in plaintiff's proposed notice. First, they argue that the notice period should be sixty (60) days, rather than ninety (90) days. (Defendants' Memorandum of Law, at 14.) Plaintiff has agreed to limit the period to sixty (60) days. (Plaintiff's Reply Memorandum of Law, at 9.) Defendants also request that the notice state that if potential plaintiffs opt in, they may be asked to appear for depositions, respond to written discovery, testify at trial, and pay costs to the defendants if they do not prevail, and further, that opt-in plaintiffs may join the lawsuit by counsel of their own choosing and that the written consent should be submitted directly to the Clerk of the Court. (Defendants' Memorandum of Law, at 14.) In addition, defendants ask that the language "[y]ou are 'similarly situated' to the Plaintiff in the lawsuit and, therefore, can join this lawsuit" should be modified to "[y]ou are potentially 'similarly situated' to the Plaintiff." (Defendants' Memorandum of Law, at 15.) In the section describing the lawsuit, defendants seek deletion of the words "greatly in excess," and in the introduction section, they seek an insertion of language stating that the defendants deny the plaintiff's allegations and any liability. (Defendants' Memorandum of Law, at 15.)

After reviewing the defendants' objections to the proposed notice, the Court finds that the following reasonable modifications should be incorporated into a revised proposed notice: (1) language stating that opt-in plaintiffs are free to be represented by counsel of their own choosing or by plaintiff's counsel, *see Rubery*, 569 F. Supp. 2d at 338; (2) language stating that the consent forms shall be filed directly with the Clerk of the Court or, if the opt-in plaintiffs select plaintiff's counsel to represent them, the consent forms should be mailed to plaintiff's counsel by a date set by plaintiff's counsel within the sixty (60) day timeframe (for filing thereafter by plaintiff's counsel), *see, e.g.*, *Guzman v. VLM, Inc.*, No. 07 Civ. 1126 (JG) (RER), 2007 WL 2994278, at *9 (E.D.N.Y. Oct. 11, 2007) (citing *Garcia v. Elite Labor Serv., Ltd.*, No. 95 C 2341, 1996 WL 33500122, at *5 (N.D. Ill. July 11, 1996), which noted that a majority of courts direct parties to submit opt-in forms to clerk of court); (3) language inserted in the introduction section stating that defendants deny the allegations set forth in the complaint; (4) the words "potentially similarly situated" shall be substituted for "similarly situated," *see Sobczak*, 540 F. Supp. 2d at 366; (5) language stating that opt-in plaintiffs *may* be called upon to testify, appear for depositions, and respond to discovery requests, *see, e.g.*, *Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009); *Hallissey*, 2008 WL 465112, at *3; and (6) the word "greatly" in the phrase "greatly in excess," with respect to the allegations about working more than forty (40) hours per week, shall be deleted. However, defendants' request for language stating that opt-in plaintiffs may be responsible for costs to the defendants if they do not prevail is, in the Court's view,

unnecessary and potentially confusing, and thus should not be included. *See Guzman*, 2007 WL 2994278, at *8 ("Given the remote possibility that such costs for absent class members would be other than de minimis, and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case, I think such language is inappropriate. It may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.").

During oral argument, defendants made further objections to the proposed notice's form. First, they dispute the use of the phrase "class action" to describe the lawsuit in this context and any use of the word "class" to describe the opt-in plaintiffs. The Court agrees that the phrase "collective action" should be used to describe the lawsuit in its current form and/or the phrase "class action" should be deleted, including in the title of the notice and its introduction. As defendants suggest, the title may read, "Notice of Lawsuit with Opportunity to Join." *See, e.g.*, *Sobczak*, 540 F. Supp. 2d at 365. The use of the word "class" is also misleading to a layperson and should be stricken or substituted accordingly. *See Bah*, 2009 WL 1357223, at *4; *Guzman*, 2007 WL 2994278, at *8. Defendants also oppose the use of the word "compel" in Part II of the notice in describing the objective of the lawsuit. The Court views such language as non-prejudicial, however. The Court also views the language "as required by law" in Part II to be appropriate and non-prejudicial, since the entire sentence makes clear that it is discussing the allegations made by the lawsuit. However, in the introduction section of the notice, such clarification is missing; accordingly, the first sentence of Part I should state something to the effect of: "A class action lawsuit has been filed against Franklin First for the alleged failure to pay overtime and/or minimum wages to loan officers as required by law."

In accordance with this Memorandum and Order, the parties shall submit a joint proposed notice to the Court for approval "in order to ensure that the drafting and distribution of the notice is timely, accurate and informative." *Rubery*, 569 F. Supp. 2d at 336 (internal citation and quotation marks omitted); *see also Amendola*, 558 F. Supp. 2d at 467 ("District courts may set the conditions under which a plaintiff gives notice to fellow employees of the existence of a collective action and the steps they must take if they wish to join the action."); *Iriarte*, 2008 U.S. Dist. LEXIS 50072, at *4 ("Courts have broad discretion over whether to grant certification, what discovery to allow, and what form of notice to provide."); *Mendoza*, 2008 WL 938584, at *1 ("Courts have wide discretion here to grant certification, allow discovery, and regulate notice."). This joint proposed notice shall be submitted within thirty (30) days of the date of this Memorandum and Order.

### C. Production of Names, Telephone Numbers, and Addresses

Plaintiff also seeks relief "requir[ing] [d]efendants to produce a computer-readable data file containing the names, addresses and telephone numbers of [] potential opt-in members so that notice may be issued[.]" (Plaintiffs' Memorandum of Law, at 13.) Courts often grant this kind of request in connection with a conditional certification of an FLSA collective action, and this Court concludes that such a request is appropriate in this case. *See, e.g.*, *Hens*, 2006 WL 2795620, at *5 (stating that the name, last known mailing address, last known telephone number, work location, and dates of employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be disclosed");

*Sherrill*, 487 F. Supp. 2d at 350 ("I agree that such information is essential to identifying prospective opt-in plaintiffs."); *Chowdhury*, 2007 WL 2873929, at *2 ("When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential plaintiffs."); *Anglada*, 2007 WL 1552511, at *7 ("Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action."); *Rubery*, 569 F. Supp. 2d 334, 338 ("Counsel's request for contact information from those opting into the class is neither unusual nor inappropriate."). Providing such information is neither unduly burdensome or disruptive to defendants' business operations. *See Hallissey*, 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business.") (citation omitted). Defendants shall provide this information to plaintiffs within forty-five (45) days of the date of this Memorandum and Order, provided that the notice submitted by the parties is approved by the Court.

### D. Partial Summary Judgment

Defendants also move for partial summary judgment dismissing the claims of opt-in plaintiffs – namely, Bob Szwaja, Matthew Douglas, Steve Glauber, Eric Harris, Rohit Chetal, Paul Callender, Patrick Varano, and Richard Krudysz – on the basis that these claims are time-barred. As set forth below, defendants' motion is denied as premature, without prejudice to renewal at a later stage of the proceedings.

#### 1. Legal Standard

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere

existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

2. Application

As a threshold matter, the Second Circuit has held that district courts should grant summary judgment only "[i]f *after discovery*, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original and emphasis added). In particular, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250 n.5). Consequently, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (reversing district court's grant of summary judgment because plaintiff had not been able to conduct discovery).

Indeed, the Supreme Court has explained that in instances where a plaintiff has not had the opportunity to conduct discovery, Rule 56(f) of the Federal Rules of Civil Procedure "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex*, 477 U.S. at 326; *see also Comm. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) ("Fed.R.Civ.P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion.").

Rule 56(f) specifically states:

Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Further, the Second Circuit has outlined the procedure by which a party may obtain relief under Rule 56(f):

[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those

17

facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)).

Here, plaintiff's counsel has submitted an affidavit in compliance with Rule 56(f), specifically explaining the information plaintiff and opt-in plaintiffs seek through discovery. For instance, he states:

> 9. Because no discovery has been conducted on these issues and because of the short time since the Defendants submitted their motion, Plaintiffs are unable to present essential facts upon which to base their opposition to Defendants' motion. Specifically, Plaintiffs have been unable to depose the Defendants' representatives who submitted affidavits in support of their motion and have not obtained any discovery related to their motion.
>
> 10. Plaintiffs request that they be entitled to conduct discovery on the issues relating to the tolling of the statute of limitations, including being granted leave to depose the Defendants' representatives who submitted affidavits in support of their motion for partial summary judgment after receiving responses to Plaintiffs' discovery requests.

(Langeland Aff. ¶¶ 9-10.)

In light of the parties' submissions, the Court concludes that defendants' motion for partial summary judgment is premature at this juncture. The statute of limitations defense is a consideration of the merits, and there currently exists a genuine issue of material fact as to whether defendants' alleged concealment of plaintiff's rights, including their alleged failure to post the required Department of Labor notice, *see* 29 C.F.R. § 516.4, permits equitable tolling of the applicable statute of limitations. *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008); *Ramirez v. CSJ & Co.*, No. 06 Civ. 13677 (LAK), 2007 WL 1040363, at *3 (S.D.N.Y. Apr. 3, 2007).

In particular, defendants' submissions of a handful of photographs of the purported Department of Labor notices, coupled with three employee affidavits, is insufficient for the purposes of this motion prior to discovery. For example, plaintiff points out that these photographs were taken a few weeks ago and may have not been posted appropriately during the relevant time period. (Plaintiff's Reply Memorandum of Law, at 9.) Accordingly, given the disputes surrounding the submitted evidence, as well as the fact that discovery has yet to take place regarding this and related issues, the Court declines to grant defendants' motion at this stage.

Defendants further argue that neither the complaint nor the consent forms of these opt-in plaintiffs sets forth any claims or allegations that could be construed as raising the doctrine of equitable tolling of the statute of limitations. (*See* Defendants' Memorandum of Law in Support, at 1-2.) However, allegations made by plaintiffs beyond the pleadings is within the scope of this Court's consideration on a motion for summary judgment – a motion, that the Court adds, was brought by defendants so that documentary evidence could be considered on their behalf. *Cf. Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) ("Once [plaintiff] pled the applicability of the equitable tolling

doctrine which went beyond the face of the pleadings, the district court should have treated the issue of equitable tolling in a manner consistent with Rule 56 for summary judgment."). Furthermore, even if only the pleadings could be considered, the Second Circuit has explicitly "clarif[ied] that fraudulent concealment is not essential to equitable tolling[,]" *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008), and so plaintiff need not "plead each of [the elements of fraudulent concealment] with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006); *see also Amendola*, 558 F. Supp. 2d at 479 ("Although this remedy is regularly granted where defendants have engaged in fraudulent concealment, 'the application of the doctrine of equitable tolling is not limited to such cases,' and 'it does not assume a wrongful – or any – effort by the defendant to prevent the plaintiff from suing.'") (quoting *Valdez ex rel. Donely*, 518 F.3d at 182-83 (citation omitted)). In any event, plaintiff is not required to have alleged facts in the complaint that overcome defendants' affirmative defense based on the statute of limitations. *See U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("Complaints need not anticipate or attempt to defuse potential defenses . . . . As complaints need not do this, the omissions do not justify dismissal."); *In re South African Apartheid Litig.*, Nos. 02 MDL 1499 (SAS), 02 Civ. 4712 (SAS), 02 Civ. 6218 (SAS), 03 Civ. 1024 (SAS), 03 Civ. 4524 (SAS), – F. Supp. 2d – , 2009 WL 960078, at *33 n.368 (S.D.N.Y. Apr. 8, 2009) ("However, this assumes that equitable tolling must be pleaded in the same manner as an affirmative element of a claim. That assumption cannot be correct given that the statute of limitations defense remains an affirmative defense, which plaintiffs are not, by definition, required to defeat in the pleadings.").[7] Since the plaintiff ultimately has the burden of demonstrating the appropriateness of equitable tolling, *see Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000), however, if plaintiff fails to sustain his burden under the summary judgment standard following discovery, the Court may then decide the issue in defendants' favor as a matter of law.

In sum, after carefully reviewing both the complaint in this case and counsel for plaintiff's Rule 56(f) affidavit, and in light of plaintiff's inability to conduct any discovery to date, the Court concludes that defendants' motion for summary judgment is premature and denies it without prejudice to refiling at the close of discovery.

---

[7] Defendants point to two cases in support of their position that plaintiff has the "burden to plead and prove the federal doctrine of equitable tolling." (Defendants' Memorandum of Law in Further Support, at 1) (citing *Dockery v. Tucker*, No. 97 Civ. 3584 (ARR), 2006 U.S. Dist. LEXIS 97826, at *29 (E.D.N.Y. Sept. 6, 2006) and *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 529 (S.D.N.Y. 2007)). However, *Dockery* is inapposite because it discusses the plaintiff's burden to plead and prove compliance with the administrative exhaustion requirement under the Federal Tort Claims Act, which is a jurisdictional requirement, unlike the statute of limitations applicable to this case. *See* 2006 U.S. Dist. LEXIS 97826, at *7 n.16. *World Wrestling Entertainment* is also distinguishable because there, in the context of civil RICO claims, the court addressed the applicability of fraudulent concealment. *See* 530 F. Supp. 2d at 529. Again, as mentioned *supra*, the Second Circuit has clearly stated that equitable tolling is not limited to fraudulent concealment. *See Valdez*, 518 F.3d at 182.

19

### III. Conclusion

For the reasons set forth above, plaintiffs' motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, and for court authorized notice and the production by defendants of certain employees' names, telephone numbers, and addresses, is granted.

Defendants' motion for partial summary judgment is also denied, without prejudice to renewal at a later stage of the proceedings.

The parties shall submit a joint revised proposed notice by July 16, 2009 that is consistent with the rulings on the language contained in this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 16, 2009
Central Islip, NY

\* \* \*

The attorney for plaintiff is Erik Harald Langeland of Erik H. Langeland, P.C., 500 Fifth Avenue, Suite 1610, New York, New York 10110. The attorney for the defendants is Neil H. Greenberg of Neil H. Greenberg & Associates, P.C., 900 Merchants Concourse, Suite 214, Westbury, New York 11590.